IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN BENNY CHAIRS, SR., )
)
        Plaintiff, )
)
vs. ) Case No. 17-cv-396-JPG-CJP
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
        Defendant.[1] )

## **MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff John Benny Chairs, Sr. seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.[2]

## **Procedural History**

Plaintiff applied for DIB and SSI in July 2013 alleging a disability onset date of March 15, 2013. (Tr. 193-207.) His applications were denied at the initial level and again on reconsideration. (Tr. 73-117.) Plaintiff requested an evidentiary hearing, which administrative law judge (ALJ) Mary Ann Poulose conducted in February 2015. (Tr. 32-67.) ALJ Poulose issued an unfavorable decision thereafter. (Tr. 14-31.) The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final agency decision. (Tr. 1-6.) Plaintiff exhausted his administrative remedies and filed a timely Complaint in this Court (Doc. 1).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).
[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423 *et seq.* and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c *et seq.* and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, which details medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

## Issued Raised by Plaintiff

Plaintiff argues the ALJ erred by not articulating the residual functional capacity (RFC) in a function-by-function assessment. He also asserts the ALJ erroneously evaluated his allegations of pain and failed to include an assistive device restriction in the hypothetical RFCs at the evidentiary hearing. Plaintiff also contends the Appeals Council applied the wrong standard in evaluating the ALJ's decision.

## Applicable Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but

that the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### **The ALJ's Decision**

ALJ Poulose determined plaintiff meets the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since March 15, 2013, the alleged

onset date. She found plaintiff had a severe impairment of status-post right pilon fracture with post-traumatic arthritis. (Tr. 19.) The ALJ opined plaintiff had the RFC to perform a full range of sedentary work. Although plaintiff could not perform past relevant work, he was not disabled because other jobs existed in the economy that he could perform. (Tr. 21-26.)

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1. Agency Forms**

Plaintiff was born in October 1966. He alleged that a broken ankle, chronic pain, and depression limited his ability to work. He previously worked as a custodian at a school and as a furniture mover at a moving company. (Tr. 217-22.)

Plaintiff underwent two surgeries for an ankle injury and experienced constant swelling and pain thereafter. He could not stand for longer than five minutes without pain and found it difficult to bend and kneel. He could walk about ten feet before he needed to rest. Plaintiff used a cane and crutches and wore a brace. (Tr. 235, 240-41.)

**2. Evidentiary Hearing**

ALJ Poulose conducted an evidentiary hearing in February 2015 at which plaintiff was represented by counsel.

Plaintiff stated he broke his ankle in 2010, which required three surgeries. He returned to work as a school custodian in 2012 but his ankle bothered him too much. He underwent an additional surgery and, afterwards, it was difficult for him to buff floors, mop, sweep, or take trash out. (Tr. 37.) Plaintiff worked for a moving company in 2000, which entailed lifting over

4

100 pounds. (Tr. 38-39.)

At the time of the hearing, Plaintiff could walk for about fifteen to twenty minutes before he needed to sit down. He could sit for about forty minutes before he needed to change positions. He could lift a gallon of milk. (Tr. 42-43.)

Plaintiff took Vicodin but still experienced ankle pain. The Vicodin caused drowsiness and made him tired. His ankle also swelled and he had to prop his leg up for about a half hour to alleviate the swelling. Plaintiff sometimes used a cane to walk far distances. (Tr. 46-48.)

A vocational expert (VE) also testified at the hearing. She considered a younger individual with a limited education and plaintiff's work history who was limited to sedentary work that allowed for no ladders, ropes, scaffolds, or unprotected heights; only occasional crouching or stooping; and unskilled work that involved no foot controls or commercial driving. The VE opined that jobs were available that accommodated for these restrictions. (Tr. 56-58.)

### 3. Medical Records

Plaintiff sustained a right pilon fracture on June 5, 2010. He underwent an open reduction and internal fixation thereafter. (Tr. 325.) Plaintiff followed up with Dr. David Karges on May 6, 2011. He had returned to full-time work. Plaintiff reported significant swelling and "some pain." He wore a compression stocking and was walking in a regular shoe. Plaintiff's patellar tendon bearing (PTB) brace did not help with pain so he stopped using it. On exam, plaintiff had minimal swelling and the proximal aspect of his plate was palpable and tender. Radiographs of his right ankle showed hardware in good position with no evidence of failure. His fracture healed nicely. There were degenerative changes in the ankle joint. Dr. Karges was "pleased" with plaintiff's progress. He refilled plaintiff's Vicodin and gave plaintiff a new compression stocking. (Tr. 337.)

Plaintiff presented to Dr. Karges on October 10, 2011, and indicated he had declined slightly in function and experienced ankle instability. He also reported significant swelling despite wearing a compression stocking. He did not wear his PTB brace because it was painful. Images of plaintiff's right ankle revealed no breakage, backing out, or malalignment of hardware. His fracture was well healed. Dr. Karges prescribed physical therapy, a custom Arizona-style ankle foot orthosis, and Vicodin. (Tr. 333.)

Plaintiff followed up with Dr. Karges on February 13, 2012, and reported he was weight-bearing in a regular shoe as tolerated since October 2011. He used a compression sock for swelling and wore a PTB brace. Plaintiff stated he was doing well overall and experienced an improvement in his pain. Radiographs of plaintiff's right ankle showed in-place hardware in his right lower extremity with no evidence of failure or migration and a well-healed fracture site. Dr. Karges prescribed Vicodin for plaintiff to take nightly as needed. (Tr. 329-30.)

Plaintiff presented to Dr. Karges on April 2, 2012, and stated he was unable to perform his job duties due to severe pain in his right ankle. Plaintiff described a sharp stabbing pain that radiated from his right ankle and prevented him from ambulating. He also experienced swelling that he treated with anti-inflammatory medications and a compression stocking. Radiographs of plaintiff's right ankle demonstrated in-place hardware in his right lower extremity with no evidence of failure or migration. His fracture sites were well healed. There were signs of subcondylar sclerosis and arthritic changes in his right ankle and right subtalar joints along with joint space narrowing. On examination, plaintiff demonstrated some prominence of his plate on the medial aspect of his right tibia and was tender to palpation over the medial malleolus. Plaintiff was uncomfortable when moving his right ankle. Dr. Karges opined plaintiff was unable to return to work and was limited to sedentary labor. He prescribed Vicodin and

Ibuprofen and instructed plaintiff to follow up as needed. (Tr. 325-26.)

Plaintiff presented to Dr. Karges on July 16, 2012, and complained of severe pain in his right lower extremity. An examination revealed a normal range of motion of the right ankle when compared to his left ankle. Plaintiff demonstrated pain with palpation of his anterior shin and anterior tibia around the fracture site. Radiographs showed intact hardware with no signs of failure and mild arthritic changes of the right tibiotalar joint. Dr. Karges refilled plaintiff's Vicodin prescription. (Tr. 341.)

On August 10, 2012, Dr. Karges noted plaintiff was unable to return to his previous work status. Dr. Karges and plaintiff discussed the options of further surgical management such as an ankle or pantalar fusion. (Tr. 343.)

Plaintiff followed up with Dr. Karges on January 21, 2013. He had returned to work but experienced frequent pain and minimal swelling. (Tr. 353.)

On March 11, 2013, plaintiff followed up with Dr. Alicia Worden. He had an altered gait and mild swelling in his right ankle. There was tenderness along the ankle joint. Images of his right ankle demonstrated intact medial and lateral plate with no areas of screw lucency. The images also revealed ankle arthritis. Plaintiff was weight bearing as tolerated. Dr. Worden prescribed plaintiff Vicodin and authored a letter stating plaintiff was unable to work. Plaintiff consented for a right ankle fusion and hardware removal. (Tr. 355-56.)

Plaintiff underwent an ankle fusion and hardware removal on April 4, 2013. He was discharged in good condition on April 6, 2013. (Tr. 506-16.)

Plaintiff presented to Dr. Mohammed Ahmed on April 22, 2013, following his right ankle fusion. He complained of pain and soreness but was otherwise doing well. He was non-weight bearing with crutches. Dr. Ahmed advised plaintiff to remain non-weight bearing and perform

range of motion exercises of his ankle. Plaintiff received a prescription for Percocet and Oxycodone. (Tr. 357.)

Plaintiff saw Dr. Andrew McNamara on May 20, 2013, and complained of pain and soreness. He was otherwise doing well. Plaintiff was non-weight bearing with crutches. Images of his ankle showed intact hardware without signs of loosening or failure. Dr. McNamara advised plaintiff to remain non-weight bearing for two weeks, at which point plaintiff could start 50% weight bearing. Dr. McNamara also advised plaintiff to perform range of motion exercise of his ankle. Plaintiff received a prescription for Percocet and Oxycodone. (Tr. 358.)

Plaintiff saw Dr. Ahmed on June 20, 2013. He complained of pain and swelling with some paresthesia on the lateral foot. Plaintiff was weight bearing as tolerated and using a cane to help him ambulate. Plaintiff took Percocet for pain control. Images of plaintiff's ankle showed intact hardware without signs of loosening or failure. Dr. Ahmed advised plaintiff to initiate physical therapy for strengthening, gait training, and modalities. He also refilled plaintiff's prescription for Vicodin and Lidoderm patches. (Tr. 359.)

Plaintiff presented to Dr. James Rhodes for therapeutic exercises on ten occasions from June 27, 2013, through July 31, 2013. At his last appointment, plaintiff reported he experienced a twenty percent improvement in his condition since he began the exercises. (Tr. 420-23.)

Plaintiff presented to Dr. Kimberly Jacobsen on September 23, 2013, and complained of pain and intermittent swelling. He also had some paresthesia on the lateral foot. Plaintiff was weight bearing as tolerated in a tennis shoe with an Arizona brace. He also used a cane to help him ambulate and took Percocet for pain. Images of plaintiff's ankle showed intact hardware without signs of loosening or failure. Dr. Jacobsen noted adequate fusion. She recommended plaintiff full weight bear as tolerated in a rocker bottom shoe, Arizona brace in a tennis shoe, or a boot.

She administered a trial injection in plaintiff's subtalar joint, which moderately alleviated his pain. Dr. Jacobsen opined plaintiff was a good candidate for a TENs unit. (Tr. 371.)

Plaintiff presented to Dr. Pooria Salari on September 30, 2013. He complained of pain and intermittent swelling. He had been weight bearing as tolerated in tennis shoes with an Arizona brace. His last injection resulted in ten percent improvement for a couple of days. Dr. Salari and plaintiff discussed a TENs unit. Dr. Salari also ordered a CT scan to check for a possible nonunion and instructed plaintiff to continue using a compression stocking and weight bear as tolerated. Plaintiff received rocker bottom shoes. (Tr. 372.)

On November 25, 2013, plaintiff presented to Dr. Brent Munroe with persistent right ankle pain. He was weight bearing as tolerated. Plaintiff stated his ankle pain was not debilitating and did not prevent him from continuing his regular daily activities. He received prescriptions for a TENs unit and rocker bottom shoes but was unable to acquire them because of financial difficulty. The CT scan showed extensive fusion of the tibiotalar joint, except for the medial aspect of the anteromedial aspect of the tibiotalar joint that still continued to show an area of nonunion. Plaintiff was instructed to weight bear as tolerated. He did not want any further surgical intervention. Plaintiff received a prescription for pain medication. (Tr. 374-75.)

Plaintiff saw Dr. Jacobsen on February 3, 2014. He reported continued pain. A CT scan showed intact hardware without signs of loosening or failure. Dr. Jacobsen noted adequate fusion. The scan demonstrated some bony overgrowth over the anterior tibia where there were two lag screws. Dr. Jacobsen and plaintiff discussed his options, which included conservative management with pain medication and removal of the anterior lag screw. Dr. Jacobsen informed plaintiff about "the natural progression of Pilon fracture and chronic pain and how some patients elect for elective amputation." Dr. Jacobsen refilled plaintiff's Vicodin. (Tr. 376.)

9

Plaintiff presented to Dr. Jacobsen on August 23, 2014, and reported his pain had maintained the same. Dr. Jacobsen noted that plaintiff was unable to return to his job as a laborer and would likely be unable to return to his job in the future. She recommended a pain management physician and prescribed plaintiff Vicodin. (Tr. 487.)

### 4. State-Agency RFC Assessments

Dr. B. Rock Oh performed an RFC assessment of plaintiff on September 30, 2013. He opined plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for a total of two hours in an eight-hour workday; and sit for a total of six hours in an eight-hour workday. Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 78-79.)

Dr. Julio Pardo conducted an RFC assessment on May 28, 2014 and concurred with Dr. Oh's opinion. (Tr. 100-02.)

## Analysis

Plaintiff first contends the ALJ should have listed his right ankle fusion as a severe impairment. "Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015) (internal quotations and citations omitted).

ALJ Poulose found at least one severe impairment and proceeded to the remaining steps of the evaluation process. She, therefore, did not commit reversible error by failing to characterize plaintiff's right ankle fusion as a severe impairment.

Plaintiff next argues that substantial evidence does not support the ALJ's RFC assessment. A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R.

§ 404.1545(a)(1). An RFC assessment is a legal conclusion reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996). However, it must rest on a sufficient evidentiary basis in consideration of all of the relevant evidence in the record. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

Plaintiff asserts the ALJ's RFC assessment was erroneous because she expressed it in terms of the exertional level of work instead of on a function-by-function basis. The Seventh Circuit Court of Appeals has squarely rejected this argument: "Although the RFC assessment is a function-by-function assessment, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (internal quotations and citations omitted). ALJ Poulose thoroughly addressed the record and provided a narrative discussion of the relevant evidence. She did not err by expressing plaintiff's RFC in terms of an exertional level of work.

Plaintiff next argues the RFC assessment was erroneous because the ALJ failed to properly consider the effects of plaintiff's pain. The Social Security regulations require an ALJ to consider several factors when assessing a claimant's allegations of pain, including the nature and intensity of pain, precipitation and aggravating factors, dosage and effectiveness of pain medications, other treatment for pain relief, functional restrictions, and the claimant's activities of daily living. 20 C.F.R. § 404.1529.

ALJ Poulose noted plaintiff complained of pain, tenderness, and numbness after his right ankle fusion and used crutches following the procedure. She pointed to medical records of physical examinations that partially corroborated plaintiff's complaints. The ALJ also noted plaintiff received an injection in the subtalar joint and took Vicodin, which allegedly caused

drowsiness. The ALJ doubted the accuracy of plaintiff's complaints of pain because plaintiff told a treatment provider that his right ankle pain was not debilitating and did not prevent him from continuing his regular daily activities.

Plaintiff asserts the ALJ should have considered a note from Dr. Jacobsen that identified the source of plaintiff's pain as the anterior lag screws, which increased soft-tissue irritation to the anterior tibia during walking. However, an ALJ is not required to mention every piece of evidence so long as she does not ignore an entire line of evidence contrary to her ruling. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). ALJ Poulose acknowledged that certain treatment notes tended to corroborate plaintiff's allegations of pain. She was not required to specifically mention every medical record that did. Her assessment of plaintiff's pain was not erroneous.

Plaintiff also argues the ALJ erred in not including an assistive device restriction in the hypothetical RFCs posed to the VE at the evidentiary hearing. The ALJ, however, did not include an assistive device restriction in the ultimate RFC and plaintiff simply assumes she was required to. An ALJ should include an assistive device restriction in a claimant's RFC if she finds that an assistive device is medically necessary. *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). "A finding of necessity must rest on medical documentation establishing the need for a hand-held assistive device to aid in walking and standing, and describing the circumstances for which it is needed, and nowhere did the ALJ hint that such evidence might be present in the medical record." *Id.* (internal quotations and citations omitted). ALJ Poulose pointed out that plaintiff's doctors did not prescribe a cane and that treatment notes mentioned plaintiff "was weight bearing, as tolerated, with rocker bottom shoes, Arizona brace in tennis shoes, or a boot." Substantial evidence supports the ALJ's decision to omit an assistive device restriction from both the hypothetical and ultimate RFC.

Plaintiff's final argument—that the Appeals Council erroneously reviewed the ALJ's decision—is not properly before the Court. When the Appeals Council denies review, the ALJ's decision, and not the Appeals Council's decision, becomes the Commissioner's final decision subject to judicial review. *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014).

## **Conclusion**

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE: February 28, 2018**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**